SCHOOL DIST. NO. 8, MARSHALL. CO., v. HOME LUMBER CO.

No. 12626—Opinion Filed Nov. 20, 1923.

Rehearing Denied Dec. 26, 1923.

Second Rehearing Denied Jan. 29, 1924.

1. Schools and School Districts — Building Funds — Contract for Materials — Action — Filing of Claim as Prerequisite.

Where a school district votes bonds to erect a new building and the district board decides to erect such building on the cost-plus basis plan, in pursuance of which it enters into a written contract with a contractor to pay him 10 per cent. of the cost of the building, up to a certain limited cost, for his services in constructing the building, the district to furnish the lumber and material, and the board orally contracts with another to supply the lumber and material and after the same is furnished the board denies the existence of the oral contract, the filing by such materialman of a verified claim with such board for such lumber and material is not a condition precedent to an action in court on such contract.

2. Same — Contractor's Bond — Failure to File Same.

In such case the right of the materialman to recover on his contract with the district board is not affected by the failure of the building contractor to file a bond as required by sections 7486, 7487, Comp. Stat. 1921, since the purpose of those sections is to protect both the municipalities and the materialmen from unpaid claims contracted for by the contractor, and were not intended to defeat contracts for material entered into directly by the municipalities through their authorized boards or officers.

3. Same — Limitation of Indebtedness — Time of Creating.

In such case, where, at the time of entering into the contract for material, the school district had approximately the entire amount of a $5,600 bond issue, with no outstanding claims against this fund, and where the material contracted for amounted to $3,799.25, the fact that this fund was afterwards dissipated and nothing was left therein to pay the material bill when it was due cannot militate against the legality of the contract under section 26, art. 10, Williams' Constitution, since at the date the contract was entered into it was within the debt limit of the school district.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Marshall County; George S. March, Judge.

Action by Home Lumber Company, a corporation, against School District No. 8 in and for Marshall County, Okla., to recover upon a certain bill for lumber and materials furnished to defendant under an oral contract. Judgment for plaintiff, and defendant brings error. Affirmed.

On October 23, 1920, this action was commenced in the district court of Marshall county by Home Lumber Company against school district No. 8 to recover the sum of $1,986.09 for lumber and material alleged to have been furnished by plaintiff to defendant under an oral contract between the parties made on or about the 8th day of August, 1920, said petition alleging, in substance,

that in August of that year defendant school district desired to build a new schoolhouse to take the place of the old building then used by the district, and that a bond issue in the sum of $5,600 had been voted by the district for that purpose; that at a regular meeting of the school district board said board entered into an oral contract with plaintiff to furnish the lumber and material for the construction of said building and agreed to pay therefor the reasonable market value at the time same was delivered; that pursuant to said oral agreement plaintiff furnished to said district lumber and material to the amount of $3,880.25, and that there has been paid on said amount the sum of $1,894.16, leaving a balance of $1,986.09, the amount sued for.

Defendant answered by a general denial, and further, in substance, that it entered into a written contract with U. J. Twilley for the erection and construction of the school building for said district, and that said Twilley failed to execute a bond as required by law, and that plaintiff, well knowing that no such bond had been executed, furnished the lumber and material at the direction of the said U. J. Twilley and not by direction of the defendant or its district board; that plaintiff had never filed a verified claim covering the indebtedness sued on in this action with said defendant prior to bringing this action; that Twilley was acting for and in behalf of the plaintiff as its agent, and that defendant made payments to Twilley from time to time as the work on said building progressed, and it had no knowledge until after said building was completed that plaintiff had any unpaid claims for lumber and material; that the sum of $5,600 voted by the district for the purpose of erecting said building was the limit of indebtedness which defendant could legally incur for the purpose of constructing said building and that any sum in excess thereof for said purpose is void.

For its reply to defendant's answer, plaintiff entered a general denial, and specifically denied the agency of Twilley or that the sale of the material sued for in the action was other than a straight sale by the plaintiff to the defendant.

Trial was had in the district court May 24, 1921, and resulted in a verdict and judgment in favor of the plaintiff for the amount sued for with interest at six per cent. from October 23, 1920. From this judgment, after unsuccessful motion for new trial, defendant has brought the case here for review by petition in error with case-made attached.

George E. Rider, for plaintiff in error.

Hatchett & Semple and Hill Anglea, for defendant in error.

Opinion by LOGSDON, C. Defendant presents its case in this court under three propositions. The first proposition stated in its brief reads as follows:

"The court erred in refusing to instruct the jury in substance that it was necessary for the plaintiff to have presented to the defendant school board prior to the institution of this suit a verified claim under oath showing the separate items and the nature of each item for which it claimed an indebtedness owing to it."

The mere statement of this proposition would seem to refute its merit, but defendant insists that this is the proper construction to be placed upon sections 10385, 10391, 10392, and 10393, Comp. Stat. 1921. These sections of the statute have reference to the custody and disbursement of funds of the school districts of the state and the object of the various provisions is to require certain forms and proceedings to be observed by those intrusted with the care and disbursement of such funds before the same can be legally paid out. Defendant cites and quotes from the case of Allen et al. v. Board of Commissioners of Pittsburg County, 28 Okla. 773, 116 Pac. 175, as sustaining its contention under this proposition. These sections as construed and applied in the above case have reference to claims for current expenses to be paid out of current funds of the municipality. In the instant case the claim is on a contract entered into by virtue of a special fund created by a vote of the people of the school district. After the lumber and material was furnished by plaintiff under the contract defendant denied liability, claiming that the sale of the material was made to Twilley and not to the district. To say that under such circumstances the filing of a claim under the above cited sections of the statute is a prerequisite to maintaining an action to establish the existence of the contract between the parties would be requiring of the plaintiff an act wholly futile and stultifying. This action was not an action brought to force the district board to allow plaintiff's claim for disputed material furnished under an admitted contract, but is an action brought to establish the existence of the contract itself, the existence of which is disputed by the board. This case is very similar to the case of Board of Education of the City of Clinton v. Houilston et al., 51 Okla. 329, 151 Pac. 10 35, in which case this court expressly held that the action was maintainable.

Defendant's second proposition reads as follows:

"The court erred in refusing to instruct the jury upon the request of the defendant that if they found that Twilley, the contractor, did not execute the statutory bond, as required of all contractors of public buildings, their verdict should be for the defendant."

In other words, the contention of defendant is that, notwithstanding its denial of the existence of a contract between plaintiff and defendant, before plaintiff will be permitted to establish such contract by proof it must show that the defendant school district, through its district board, performed its statutory duty by requiring a bond of the contractor. Such a contention is untenable upon the face of it. The execution of or failure to execute a bond to, protect the school district in the erection and construction of the building against the claims of unpaid materialmen or laborers dealing directly with the contractor could have no effect one way or the other upon the validity of the contract between plaintiff and defendant. If plaintiff made the contract with defendant the defendant would be bound by it whether the contractor was under bond or not. The cases cited and relied on by defendant under this proposition are cases where the materialmen contracted with and furnished material to the contractor, and being unpaid for the same sought to enforce liability against the municipality in the absence of a contractor's bond. The court held in those cases that the person furnishing the material under contract with the contractor was bound to know that under the law municipalities are required to be protected from liability by a bond and that it was the duty of such materialmen before furnishing the material to the contractor to see that a proper bond had been given. Such is not the case presented by the record here.

Defendant's third proposition reads as follows:

"The alleged indebtedness to the plaintiff was incurred in violation of the Constitution and laws of this state and is therefore not a legal obligation of the school district."

Under this proposition defendant contends, in substance, that the claim of plaintiff is in excess of the indebtedness which defendant could legally contract for the year 1920. At the time that the contract was entered into between plaintiff and defendant, defendant had approximately the entire sum of $5,600 which had been voted by the people of the district for the purpose of erecting this building. The amount of material furnished under plaintiff's contract was $3,880.25, so that at the time the contract was entered into, if a contract was made,

it was within the limits of the fund voted by the people for this purpose. That this fund was afterwards dissipated and that none of it remains with which to pay plaintiff's claim cannot militate against the legality of the alleged contract at the time it was entered into. This has been definitely settled by the decisions of this court both before and since statehood. M. H. Johnson v. Board of County Commissioners of Pawnee County, 7 Okla. 686, 56 Pac. 701; D. F. Huddleston v. Board of Commissioners of Noble County, 8 Okla. 614, 58 Pac. 749; Buxton-Skinner Stationery Co. v. Board of Commissioners of Craig County, 53 Okla. 65, 155 Pac. 215.

As to whether or not the testimony reasonably sustains the verdict of the jury finding that the contract between plaintiff and defendant was actually entered into at or about the time alleged in plaintiff's petition requires a brief review of the testimony introduced.

The following excerpts of the testimony are taken from the abstract contained in defendant's brief.

L. E. Creekmore, called on behalf of plaintiff, testified on direct examination:

"I am secretary and treasurer of the plaintiff, Home Lumber Company, a corporation, the general business of which is retailing lumber and building material. The itemized statement attached to the petition shows the regular selling price of material at the time stated and is correct. The material was furnished to the defendant school district for the purpose of building a one-story school building. I met the school board consisting of T. J. Ballard, Dr. J. H. Logan and Sanders Keel at the residence of Sanders Keel, clerk, before any material was furnished and before they had entered into the contract with Mr. Twilley. I met with them after the Twilley contract was entered into, and at the same place, but Dr. Logan had an urgent call and went away before the meeting. The negotiations that I took up with the school board was this, that they had entered into a contract with Mr. Twilley to build this house on a cost plus basis, and I was to furnish them all the material it took to build the building. In furtherance of that negotiation I furnished them the material that is itemized in the account attached to the petition. That account shows all the credits they are entitled to. The unpaid balance, as shown by the account, is $1,986.09. The whole bill was $3,799.25. They paid $1,000 at one time and $750.32 at another."

On cross-examination his testimony material here was as follows:

"The contract I had with them was a verbal contract and was prior to the con-

tract with Twilley. The items were not agreed upon, but I was to furnish them the material at the prevailing price at the time to build that school building. They agreed to it. I do not know that it was ever put to a vote any more than that they all agreed it was alright. However, after this contract was entered into between them and Mr. Twilley, Mr. Twilley would send in an order for certain stuff and I would send it out but at his request and under his contract."

Dr. J. H. Logan, called on behalf of defendant, testified:

"I am a member of the school board and know Mr. Creekmore and Mr. Twilley, the contractor. We built a school house last year. The contract was made with Mr. Creekmore and Mr. Twilley. The written contract attached as 'Exhibit A' to the answer is the contract I refer to. This contract is the only contract we had."

On cross-examination he testified:

"There was nothing said about the board furnishing the material that I knew of. We had nothing to do with ordering it out there."

T. J. Ballard, called on behalf of defendant, testified:

"Am member of the school board and was treasurer at the time the contract attached as 'Exhibit A' to answer was entered into. Mr. Twilley done the ordering of the material, and we paid for it as far as we could. There was no statement furnished. The first payment made on the contract, Sanders Keel and myself were in town, and Creekmore and Twilley came to us and wanted $1,000. We had no warrants with us and they went somewhere and got one. This was supposed to be for lumber and material. The way I understood the contract was that the lumber was to come from the Home Lumber Company: we made the deal with Mr. Twilley, and he was to pay for the lumber. The school board did not order any of the stuff from the Home Lumber Company and did not authorize anyone to order it. At the time Creekmore met with us, when he claim we bought this material from the Home Lumber Company, the members of the board were all there and met with him but there was no question presented and voted on and no record was made of the meeting."

Sanders Keel, called on behalf of the defendant, testified:

"I am now, and was in 1920, clerk of school district No. 8, the defendant in this case. I signed the contract that is attached as 'Exhibit A' to our answer. There was no other contract than that entered into with anyone with reference to building the school house. After that contract was entered into I did not, as clerk of the district board, either personally or in connection with the other members of the board, order any material or supplies of any kind

from the Home Lumber Company."

On cross-examination he testified:

"We did not agree that we would furnish all the material. Mr. Creekmore said he wanted to furnish the material. We made our contract with Twilley. He was to furnish the material. He never said where he was going to get it. It was my understanding of the verbal contract with Creekmore that Twilley was to get this stuff and pay for it, and then we were to pay Twilley."

U. S. Twilley, called on behalf of defendant, was not questioned on direct examination concerning the alleged contract between plaintiff and defendant. On cross-examination he testified in reference thereto as follows:

"I was present when we all agreed on the terms of the contract I entered into with the board. Mr. Creekmore was there. I was not the agent of the Home Lumber Company in that transaction. Neither Mr. Creekmore nor the Home Lumber Company had me employed in this matter. Mr. Creekmore and myself were not partners in this job. Neither of them got a dime of my per cent. I did not get anything for them furnishing the material. I was present when Mr. Creekmore made the contract with them to furnish the material. That was before I started the job. We took the plans and submitted them and they decided to give me the job. The contract was drawn up later. The best I remember the job was pretty well advanced before the contract was signed up. On the day that we all agreed that they would let me have the contract that was signed up later, Mr. Creekmore sold or contracted for the material to go into the building. He was to furnish everything according to the plan that it would take to build the school house. I do not remember the price. I did not agree to furnish the material to go into the building. The Home Lumber Company furnished it. As between me and the board, the board agreed to furnish and pay for the material. They gave me a per cent. It was a cost plus basis proposition, whether it cost $4,000 or $10,000."

The original contract between the school district board and U. J. Twilley was executed on August 10, 1920, the school district board being parties of the first part and U. J. Twilley party of the second part. This contract was introduced in evidence, and the material portion thereof upon the question now being considered reads as follows:

"That the parties of the first part agree to furnish and pay for all material and labor performed in the erection of a one-story frame school building to be built for above named district in the town of Lebanon, Oklahoma, same to be built in accordance with the plans and specifications now

on file with the clerk of said district and in accordance with the bids for same which were rejected, and it being agreed to and by the parties of the first part to have same erected on a cost plus basis.

"The party of the second part hereby agrees and guarantees to the parties of the first part that he will supervise and erect the said building in accordance with the plans above mentioned, and guarantees that same will not exceed a total cost of $6,600 without any painting and papering."

It is thus seen that by the express terms of the written contract signed by the members of the school district board they were to furnish any pay for all material used in the construction of the school building. While their oral testimony upon the trial indicates that they had a very hazy and indistinct idea as to their duties and liabilities under this contract, their uncertainty cannot be attributed to any ambiguity in the terms of the written contract which they signed. Against the negative and inconclusive testimony of the members of the board, the terms of their written contract, the testimony of L. E. Creekmore and the testimony of U. J. Twilley, stand practically without substantial contradiction. Under this condition of the record it cannot be said as a matter of law that the evidence is insufficient to sustain the verdict or to support the judgment based thereon.

It is therefore concluded upon the whole case that no error of law prejudicial to the rights of the defendant occurred upon the trial of this case; that the verdict of the jury and the judgment of the court are reasonably sustained by the evidence, and that the judgment of the trial court should, therefore, in all things be affirmed.

By the Court: It is so ordered.