Note.—See under (1) 38 Cyc. pp. 1565, 1586. (2) 38 Cyc. p. 1571. (3) 38 Cyc. p. 1574.

---

**TOWN OF COVINGTON v. ANTRIM LBR. CO.**

No. 15687—Opinion Filed Nov. 23, 1926.

Rehearing Denied Jan. 18, 1927.

1. **Municipal Corporations—Liability for Price of Material Within Town's Debt Limit When Contract Made.**

Where the board of trustees of an incorporated town entered into a contract for material to be used in the construction of a waterworks and sewer system, and where

at the time of entering into such contract the incorporated town had approximately the entire amount of a $75,000 bond issue with no outstanding claims against the fund, and where the material contracted for amounted to $1,291.95, the fact that this fund was afterward dissipated and nothing was left to pay the material bill when it was due cannot militate against the legality of the contract, under section 26, art. 10, Williams' Constitution, since at the date the contract was entered into it was within the debt limit of the incorporated town.

2. **Same—Action Against Town on Contract for Material Furnished not Affected by Failure to Verify Claim Presented to Town Board.**

Where an incorporated town votes bonds to construct a waterworks and sewer system and contracts with a contractor to perform the services in constructing such system on a cost-plus basis, the incorporated town to furnish the necessary material, consisting of lumber, cement, brick, etc., and the board of trustees of the incorporated town contracted with a materialman to supply the cement from time to time as the contractor for the construction of the works needed the same, and after the material is furnished the board of trustees refuses to pay for the material upon the sole ground that all the money in the bond fund had been expended, and when upon suit being filed by the materialman the town denies the existence of the materialman's contract, the fact that the claim of the materialman, filed with the town board, was not verified will not defeat the materialman in an action in court on such contract.

3. **Same—Validity of Contract not Affected by Subsequent Diversion of Funds.**

After a valid contract for the sale of material is entered into with an incorporated town in accordance with the requirements of law it will not be invalidated by any subsequent diversion of the funds provided by the incorporated town for meeting the payments required by the contract.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by the Antrim Lumber Company against the town of Covington, a municipal corporation. Judgment for plaintiff, and defendant appeals. Affirmed.

Simons, McKnight & Simons, for plaintiff in error.

McKeever, Moore & Elam, for defendant in error.

Opinion by PINKHAM, C. This action was commenced in the district court of Gar-

field county by the Antrim Lumber Company against the town of Covington, to recover the sum of $1,291.95, for material alleged to have been furnished by the plaintiff, Antrim Lumber Company, to the defendant, town of Covington, under a contract for material to be used in the construction of a sewer and waterworks system, and that there is due plaintiff the sum of $1,291.95, with interest thereon from the 7th day of May, 1920, at 6 per cent. per annum, until paid, and that no part of said account has been paid; that demand for the same has been made and payment refused.

Defendant answered by a general denial, and further specifically denied that the defendant purchased said material from plaintiff, and alleged that it is informed that the plaintiff did furnish certain material to some contractor or contractors who were constructing or erecting a sewer system or other public works in the town of Covington, and that said material, if used in the construction of any public works in the town of Covington, was sold to the contractor who had been awarded the contract for the erection and construction of such public works; that such contractor or contractors have been paid in full the contract price for such sewer system or other public works, and there is no liability on the part of the town of Covington to pay to the plaintiff any further or additional sums therefor.

Defendant further alleged that the board of trustees of the town of Covington had no legal authority to contract for the purchase of material covered by the account sued on by the plaintiff, and that no appropriation or levy had been made to cover the purchase price of same, and there are no funds belonging to the town of Covington available to pay for the same, and that the purchase of such materials, if made by the board of trustees, was in excess of the legal debt limit for which indebtedness could be incurred for such year; that no legal contract was made by the town of Covington with plaintiff for such materials and that it is not responsible therefor.

Plaintiff filed a general denial of the answer of defendant, and upon these issues the cause went to trial before the court, without a jury. At the close of the evidence the court rendered a judgment in favor of plaintiff for the sum of $1,269.25, with interest thereon from date of judgment at 6 per cent. until paid. Motion for a new trial was overruled, and defendant has duly appealed to this court by petition in error and case-made attached. For reversal of the judgment defendant presents the following propositions:

"(1)   Where a bond issue has been voted by an incorporated town in this state for the purpose of constructing a waterworks and sewer system, and the money so derived from the sale of such bonds has all been expended for the legitimate purposes of constructing such public works, but in the course of the construction thereof the town has incurred obligations for materials in excess of the funds derived from such bond issue, has the court any authority to render a judgment in favor of claimant for such materials against the town?"

"(2)   Is an incorporated town either authorized or required to pay a claim against the town for materials alleged to have been furnished to the town unless and until the claimant has complied with the requirement of the laws of this state with regard to presenting claims, whereby they are required to be itemized and verified by the claimant and thereafter audited by the board of trustees, and if allowed entered by the clerk upon the claim register, given consecutive numbers, and paid in the order of their allowance as required by the statutes of this state?"

"(3)   Where a person claims to have furnished materials to an incorporated town for the purpose of being used in the construction of a waterworks and sewer system, and even though the town did have on hands sufficient funds with which to pay for such materials at the time they were furnished, yet if the person furnishing the materials failed and neglected to present a proper claim to the town for such materials until all of the funds derived from such bond issue had been used and expended for the legitimate purposes of the construction of such public works, can such claimant, who has failed and neglected to file its claim in the manner required by law, before the funds were exhausted, come in after the funds were exhausted and bring suit against the town for the amount of such materials and thereby compel the town to pay therefor the amount in excess of the funds derived from the bonds issued for such purpose?"

These propositions must be considered in the light of the facts disclosed by the record before us. The undisputed evidence shows that in the year 1918 the town of Covington voted bonds to construct a waterworks and sewer system in the sum of $75,000, and later another additional bond issue was voted in the sum of $25,000 for the same purpose. The bonds were regularly voted and the town of Covington entered into a contract with a construction company to perform the work, the town of Covington to purchase the material. Competitive bids for the materials were submitted; the plaintiff and the Long-

Bell Lumber Company submitted bids, and the bid of the plaintiff company, which was in writing, being the lowest bid, was accepted by the board of trustees. It appears that the plaintiff was unable to furnish the brick that was required by its bid within the time it was needed, and this item was bought by the defendant from the Long-Bell Lumber Company, and the plaintiff furnished the cement called for by its bid, and also a small amount of lumber amounting to some $156, which was not included in the plaintiff's bid, but which the defendant purchased from time to time from the plaintiff as it was needed in the progress of the work.

Mr. Squires, one of the members of the board at the time the transaction in question took place, stated in his testimony:

"In purchasing material for the construction of the sewer and waterworks for the town of Covington we asked several lumber yards of our town to submit us bids on such materials as we needed, and they did so, and Antrim Lumber Company submitted the lowest bid; on the cement and brick we offered them a contract to furnish such material. By that time they discovered that they were unable to secure the brick in time for our use and preferred not to do that and accept that portion of their bid providing for the supplying of cement and we bought the brick.

"Q. You bought the brick elsewhere?

"A. We bought the brick somewhere else, yes, sir.

"Q. But you did accept the bid for cement?

"A. Yes, sir. That came before the regular meeting of the board of trustees of the town of Covington, and it was accepted and the manager called in and was told that we would accept materials at which time he told us that he could not furnish the brick as soon as we needed them and we concluded we would buy the brick elsewhere and he might furnish the cement.

"Q. This material was delivered, was it?

"A. Yes, sir, it was.

"Q. Just as you needed it? A. Yes.

"Q. In the construction work?

"A. Yes, sir; it was.

"Q. It wasn't delivered all at one time?

"A. Well, no, I think not, the cement was delivered on the job as we needed it."

This witness further stated that:

"There was no difference regarding the account of the Antrim Lumber Company whatever, as I remember it, other than the return of the sacks."

He further testified that the manager of the lumber company appeared before the board two or three times for settlement, and in answer to the following question:

"In other words, before you went out of office your board of trustees would have paid this bill if you had had the money out of these funds they voted, would they not?"
—the witness answered as follows:

"We would most especially inasmuch as it was the first bill we made."

Mr. Buchan, who was president of the board of trustees at the time the transaction occurred, testified that:

"No money had been spent out of the sewer fund at the time we contracted for that material from the Antrim Lumber Company."

Mr. Mooter, the other member of the board of trustees, stated that there was no dispute about the correctness of the plaintiff's bill, or the fact that it was owing, and that it never had been paid; that the fact that the bill was not paid had nothing to do with the correctness of the account, and that the amount due the plaintiff was never disputed, and that the reason why it was not paid was "because the treasurer notified us we were 'broke'."

Defendant cites in support of its propositions sections 6, 7, and 9, chap. 80, Sess. Laws 1910-11, which provide in effect that it is unlawful for the trustees of an incorporated town to make any contract for, incur, acknowledge, approve, allow, or authorize any indebtedness against the town in excess of the specific amount authorized for such purpose by bond issue, but they are made personally liable for such excess if they do, and their bondsmen are held liable.

The argument is that if the plaintiff had any unpaid claim against the defendant, town of Covington, for an amount in excess of the authorized bond issue, and that if it is established in this case that the claim of plaintiff is in excess of the amount authorized, and that as no estimate or levy was ever made to cover the same under any tax levy, the plaintiff had his remedy against the individual members of the board of trustees.

In further support of defendant's propositions attention is directed to sections 8595 and 8596, C. S. 1921, which provide that all claims for money due from any county, township, city, or incorporated town, shall be itemized in detail, verified, and filed for allowance, etc.

It is contended that if the claim was, in

fact, legitimate and had been properly presented to the board of trustees, by being made out in itemized form as required by the statute, sworn to by the claimant, allowed, and entered upon the claim register of the town, the plaintiff could have obtained payment before these funds were exhausted, but that for some cause it waited and neglected to present its claim in proper form until the funds out of which the claim could have been paid were all expended for other necessary purposes in the construction of the waterworks and sewer system, and that the plaintiff then filed this suit for the purpose of obtaining a judgment against the town upon its alleged contract.

The difficulty, we think, with the defendant's theory is that it has overlooked the important fact that in the instant case there existed a special fund as the result of the bond election, consisting of $75,000 to be expended for the public improvement in question. The board of trustees was to furnish the materials and a construction company was to furnish the labor. The first contract made by the board of trustees, after calling for competitive bids for materials, was with the plaintiff, who was the lowest bidder at a time when the special fund, appropriated by vote of the people, was ample to cover the contract price of materials purchased by the defendant from the plaintiff. The plaintiff complied with the contract by furnishing the cement which constituted an essential part of the material necessary for the work, and which material was used in the construction of the waterworks and sewer system.

The evidence further shows that this material was delivered as it was needed, and not taken at one time, and when the entire amount of plaintiff's material had been furnished, and put into the waterworks and sewer system, the plaintiff presented his final account, and was informed by the trustees that his account was correct, but that the funds derived from the sale of the bonds had all been expended.

In a case very similar in its facts to the instant case, School Dist. No. 8 v. Home Lbr. Co., 97 Okla. 72, 221 Pac. 433 the court said in the third paragraph of the syllabus:

"In such case, where, at the time of entering into the contract for material, the school district had approximately the entire amount of a $5,600 bond issue, with no outstanding claims against this fund, and where the material contracted for amounted to $3,799.25, the fact that this fund was afterwards dissipated, and nothing was left therein to pay the material bill when it was due, cannot militate against the legality of the contract under section 26, art. 10, Williams' Constitution, since at the date the contract was entered into it was within the debt limit of the school district."

It is not contended, and, in the light of this record, it could not be successfully contended, that at the time the board of trustees of the town of Covington contracted with the plaintiff for the material furnished it, that it did not have ample funds derived from the sale of the bonds to satisfy the plaintiff's claim, or that the bill of plaintiff, presented to the board of trustees and by it allowed, was not paid for the reason and only reason that the special fund, the proceeds of the bond issue, had been expended after plaintiff's bill was contracted, and the material which it furnished was used in the construction work for which the bonds were voted.

In the case of Buxton & Skinner Stationery Co. v. Board of Commissioners of Craig County, 53 Okla. 65, 155 Pac. 215, the court held that the indebtedness was created at the time the contract was made and supplies furnished, and not when the claim was presented for payment, and further held the claimant in that case was entitled to judgment.

In the opinion it is said the plaintiff was under no necessity for presenting its claim immediately for payment; that it could have presented it at any time within two years after the same accrued.

It is true the plaintiff's claim in the instant case was not verified, but the statement of account was itemized, filed with the town clerk, approved by the superintendent appointed by the board to check the supplies furnished, and was allowed by the board of trustees.

Under this state of facts it is clear that the absence of a verification was not the reason why the claim was not paid, and that if the claim had been verified it could not have been paid because there was no money left in the funds to pay for the material furnished by the plaintiff that went into the waterworks and sewer system.

In view of the admitted fact that there was no dispute as to the correctness of the claim of plaintiff, or that it was due and owing and not paid because the funds set apart for the purpose of paying the same had been dissipated, a verification under such circumstances would have been an idle ceremony.

The town clerk testified that plaintiff's claim for the cement furnished by it was allowed, but that he did not enter the claim on the claim register; that he "was pretty busy along about that time"; and that he could not say why he neglected to do so.

The defendant, in its brief, cites the case of O'Neil Engineering Co. v. Incorporated Town of Ryan, 32 Okla. 738, 124 Pac. 19, in support of its theory. The first paragraph of the syllabus of that case reads as follows:

"Whoever deals with a municipality does so with notice of the limitations on its, or its agent's, powers. All are presumed to know the law and those who contract with it or furnish it supplies do so with reference to the law; and if they go beyond the limitations imposed, they do so at their peril."

A number of other decisions of this court and of other jurisdictions are cited by counsel for defendant to the same effect.

This rule of law is well established in this state, as it is in perhaps all states; but the law there announced has no application to the instant case, because the defendant, town of Covington, had authority to make the contract in question and purchase the materials of plaintiff out of the proceeds of the bond issue; and because the defendant accepted the bid of plaintiff, who delivered the material which was used in the sewer and waterworks construction, so that no question of authority can arise concerning the conduct of the board of trustees of the town of Covington.

The evidence is we think, conclusive, that when the plaintiff's bid was submitted and the contract entered into for the material, the funds had just been voted and the plaintiff's bill was the first bill contracted for, and as we understand the record no money had been spent at that time out of the proceeds of the bond sale.

It is not contended by the plaintiff that a valid contract could be made by a municipality when there was no fund against which to make a contract, which fund must be created either by proper levy or by a bond issue voted by the people; but in this case there was a fund derived from the sale or bonds—a special fund for the specific purpose of constructing the public improvement in question. With knowledge of the existence of such fund, and of the purpose for which it had been created, the plaintiff sold, in good faith, its material under a contract with the lawfully constituted town authorities.

In the recent case of City of Woodward v. Manhire Grate & Equipment Co., 98 Okla. 83, 224 Pac. 356, the court said:

"If a valid contract for the sale of merchandise or equipment is entered into with a municipal corporation in accordance with the requirements of the law, it will not be invalidated by any subsequent diversion of the funds provided by the corporation for meeting payments required by the contract."

In the case of Higgins v. City of San Diego (Cal.) 50 Pac. 670, Mr. Justice Beatty, in his concurring opinion, uses the following language, in a case in which some of the questions involved in the instant case were considered:

"But the question here is whether the holder of a legal and valid claim shall have a plain and ordinary judgment establishing his right. The question whether any means of paying such judgment can be lawfully provided is not necessarily involved."

We deem the above language particularly applicable to the instant case.

We conclude, upon the whole case, that no error of law prejudicial to the rights of defendant occurred upon the trial of the cause, and that the judgment of the trial court is fully sustained by the evidence.

We think the judgment should therefore be affirmed.

By the Court: It is so ordered.