SAN MIGUEL, GONZÁLEZ AND VALIENTE & COMPANY, Plaintiff and Appellant, *v.* MUNICIPALITY OF CAGUAS, Defendant and Appellee.

No. 9722. Argued January 13, 1950.—Decided April 9, 1951.

---

*E. Martínez Rivera* and *Luis Blanco Lugo* for appellant: *Federico E. Virella* for appellee.

ON RECONSIDERATION

Mr. Justice Negrón Fernández delivered the opinion of the Court.

An extensive motion for reconsideration of our judgment of May 10, 1949, *San Miguel, Etc. & Cía.* v. *Municipality,* 69 P.R.R. 895, was filed by plaintiff-appellant which was likewise opposed in the same elaborate manner. Additional mo-

tions were filed by the parties. The questions raised in said motion call for a re-examination of the record, as to the facts as well as to the applicable law.

By our judgment of May 10, 1949, we affirmed the decision rendered by the District Court of Caguas dismissing the complaint in an action for the recovery of money and other relief filed by San Miguel, González, and Valiente and Company. Said commercial firm purchased from the Banco Territorial y Agrícola in liquidation, a credit for the amount of $2,500 which had been assigned to the bank by the engineer Robert R. Prann, and which the latter had against the Municipality of Caguas for the amount of $12,384.63.[1] This sum represented the difference between $33,368.70 actually paid to Prann chargeable to the sum of $33,976.64—total amount of a contract adjudicated him at a public bid in the Municipality of Caguas for the construction of a filtration plant of the waterworks—and the final liquidation of the work, made by the Commissioner of the Interior, amounting to $45,753.33, which was the total cost of same under the contract between the municipality and Prann.[2] The money

---

[1] Although in the complaint the sum of $12,484.63 is claimed, the credits assigned by the bank to plaintiff—and which Prann conveyed to the bank—amount to $12,384.63, according to the certificates issued. In the contract of assignment between the bank and plaintiff although it specifies the amounts of the credits involved—to $4,575.33 and $7,809.30—the total sum of said credits was also stated erroneously.

[2] The complete text of the contract reads as follows:

"1. This contract celebrated this 3rd day of the month of February, nineteen hundred and thirty-one, between José Reguero González, Mayor, on the one side and Robert R. Prann on the other, makes it known: That according to the call for bids, instructions to the bidders and specifications attached herein, and according to the memorandum and plans filed in the office of the Engineer of Municipal Works, which are a part of this contract, the said José Reguero González, Mayor, by and in the name of the Municipality of Caguas and the said Robert R. Prann resolve and agree between them the following:

"2. That the significance of the following words which appear in the present contract are accepted by both parties:

"The word 'Department' or any pronoun used in its place, shall mean the Department of the Interior of the Government of Puerto Rico. The word 'Commissioner' or any pronoun used in its place, shall mean the

to be used in the construction of said filtration plant was part of a loan made by the Municipality of Caguas for $146,000, of which $80,000 were allotted to improvements

Commissioner of the Interior of the Government of Puerto Rico, or any agent duly authorized to represent the Government of Puerto Rico in the execution of the present contract.—The words 'Superintendent of Public Works' or any pronoun used in its place, shall mean the Superintendent of Public Works of the Department of the Interior of the Government of Puerto Rico, or any agent duly authorized to represent it in the execution of the present contract.—The word 'Architect' or any pronoun used in its place, shall mean the Architect of the Department of the Interior of the Government of Puerto Rico, or any agent duly authorized to represent it in the execution of the present contract. The words 'Engineer of Municipal Works' or any pronoun used in its place, shall mean the Engineer of the Department of the Interior in charge of the municipal works, or any agent duly authorized to represent it in the execution of the present contract. The words 'Mayor of Caguas' or any pronoun used in its place, shall mean the Mayor of Caguas of the Government of Puerto Rico or any agent duly authorized to represent him in the execution of the present contract.—The word 'Inspector' or any pronoun used in its place shall mean the person duly authorized, who acts in representation of the Engineer of Municipal Works and directly in charge of the Inspection of the work executed under the present contract.—The word 'Contractor' or any pronoun used in its place shall mean the second party in this contract.

"3. That the second contracting party shall furnish and store the material and shall execute and provide the labor involved for the full construction and completion of the work. Contract No. 1-E of the Filtration Plant of Caguas, in the sum stated in your proposal dated January 23, 1931, amounting to a total of thirty-three thousand, nine hundred and seventy-six dollars and sixty-four cents ($33,976.64) at the prices per unit according to your proposal.

"4. That the first party, by and in representation of the municipality of Caguas agrees to pay to the second party, for all the materials supplied and accepted, and for all the labor involved for the execution and completion of the work in the manner required in this contract and the prices above mentioned and agreed upon.

"5. The said Robert R. Prann shall begin work on or before the 23rd day of April 1931, and shall complete it on or before the 23rd day of October 1931.

"6. That the General Conditions of the Contract for Insular Public Works in force since July 1902 are applicable to this contract and are a part thereof.

"7. The Engineer of Municipal Works shall execute, with the approval of the Commissioner of the Interior, all the work or part thereof for which this contract has been executed, if in his opinion the progress of the work were unsatisfactory, and the Municipality of Caguas shall pay all the expenses, which will be deducted from any sum of money owed or that may be owed in the future to the contractor.

to the municipal waterworks. The contract between Prann and the municipality in the amount of $33,976.64 was executed on February 3, 1931, and approved by the Commissioner of the Interior of Puerto Rico on April 13, of the same year.

"8. If for any reason the contractor delays or ceases to supply the materials for the execution of the work on the stipulated day, or if in the opinion of the Engineer of Municipal Works, the former does not execute the work faithfully and diligently according to the plans, specifications and other requirements of this contract, then, in any of the cases, the first contracting party or his successor legally appointed shall annul, with the approval of the Commissioner of the Interior, this contract notifying it in writing to the second party, and after giving notice, the contract shall be annulled, subject to the provisions of Sections 32, 33 and 34 of the General Conditions of the Contract for Insular Public Works.

"9. Monthly payments shall be made to the contractor during the progress of the work in proportion to the material supplied and labor performed during the month, chargeable to this contract, the amount of 10 per cent of each payment being retained until the full completion of the work and its final acceptance; provided compliance is had with all the requirements as stipulated in the General Conditions of the contract.

"10. Neither this contract nor any interest thereon, shall be transferred to another person or persons, and in case that said transfer should take place, the Municipality of Caguas may refuse to continue this contract either with the person making the transfer or with the person to whom the transfer has been made, but every right of action for nonperformance of this contract by the said Robert R. Prann, shall be reserved to the Municipality of Caguas.

"No person belonging to, or employed in the service of the Government of Puerto Rico, shall or may be part whatsoever in this contract or in any benefit from same.

"11. No worker, laborer, mechanic employed by a contractor, subcontractor or any person who may make or agrees to make the work, in part or in whole the object of this contract, shall be permitted or forced to work more than eight hours a day in any natural day, with the exception of such extraordinary emergency cases caused by fire, flood or danger of loss of lives or property, and said workers, laborers or mechanics employed in any insular public work, shall receive not less than ONE DOLLAR for each legal day of work executed.

"12. This contract is subject to the approval of the Commissioner of the Interior.

"In witness whereof, the contracting parties sign and seal under their hands and separately on the above-mentioned date.

| | |
|---|---|
| (Sgd.) Roberto Colón | Dr. J. Reguero González |
| Witness | Mayor |
| G. Wilson MacDow | Robert R. Prann. |
| Witness | |
| Approved: April 13, 1931 | Guillermo Esteves |
| | Commissioner of the Interior." |

The "General Conditions of the Contract for Insular Public Works," in force since July 1902 [3] are a part of said contract.

 Appellant's first ground of his motion for reconsideration attacks our conclusion that the claim of contractor Prann against the Municipality of Caguas for extra work done under the terms of the contract herein referred to, should be considered as forfeited for nonperformance and as waived, since nothing in the record showed that said contractor had presented his claim to the municipality in the "next monthly estimate for extra work." We believe that appellant is partly correct. Let us see.

As it appears from the voluminous record before us, once the work was begun by contractor Prann, and pursuant to the terms of the contractor to that effect, the Superintendent of Public Works of the Department of the Interior issued a monthly certificate, the approval of which he recommended

---

[3] Clause No. 30 of said General Conditions provide:

"EXTRA WORK

"Any alteration or changes in the project producing work not provided for in the contract shall be considered as extra work.

"No claim for extra work shall be allowed unless such work shall have been previously ordered in writing by the local engineer with the approval of the Superintendent of Public Works, and an agreement upon the prices to be paid for such extra work has been reached between the engineer and the contractor and such prices duly approved.

"The claims for extra work, when it is ordered, shall be presented and paid in the next monthly estimate for extra work, otherwise said claims shall be forfeited and waived.

"Alterations or changes in the details of the work not entailing new prices shall not be considered as extra work, and the contractor will be required to perform such alterations or changes under the direction of the local engineer at the prices named in the Contract; *Provided however,* That said alterations and changes do not increase the quantities over 20 per cent of the original estimate. For all work in excess of 20 per cent of the original quantities caused by such alterations and changes, the Bureau of Public Works reserves the right to enter into a written agreement with the contractor to execute such additional work upon prices mutually agreed upon, or to have the same carried out by day labor or by any other method it may direct. Should, however, any alterations or changes in the work produce a diminution in the original cost or quantities not reaching 20 per cent, the reduction thus made shall not constitute a claim for damages by the contractor or for profits supposed to be lost by him on the work that may be altered or dispensed with."

to the Engineer of Public Works of said department and which was finally approved by the Commissioner. Said certificate contained a monthly statement of the work performed and the material stored therefor by the engineer Prann during said month. It also contained the cost per unit and price, with the total of each item of the work done, and the material stored stating also the amounts which the municipality had to retain, under the terms of the contract, equivalent to 10 per cent of each payment, until the full completion of the work and its final acceptance. By virtue of these certificates the municipality issued payments in favor of the engineer Prann, which were certified by the Director of Public Works of the Municipality, approved by the Mayor and authorized by the Municipal Auditor, chargeable to the loan of $146,000 herein referred to in its item "Improvements in the Waterworks." After said certificate were approved by the Commissioner of the Interior they were sent to the Mayor of Caguas to follow the aforesaid procedure.

Six certificates were issued up to January 30, 1932, amounting to $33,377.15 of which $30,090.14 were paid to Prann, and $3,287.01 were retained by the municipality according to the terms of the contract. In none of said six certificates engineer Prann claimed that he had done any "extra work." The following certificate, No. 7, comprised the work done by engineer Prann up to February 27, 1932, totalling $3,699.18, of which $420.62 were to be retained according to the terms of the contract, and $3,278.56 were to be paid to the contractor. This certificate contains for the first time, under the title "Work in Excess of the 20 per cent," an item amounting to the sum of $1,350. This certificate after going through the usual proceedings regarding its approval was sent to the Mayor of Caguas for its payment on March 10, 1932. Thus far the only amount for extra work included in the first seven certificates in favor of engineer Prann, was that of $1,350 already mentioned, which sum, being included in

"the next monthly estimate for extra work," was claimed in time and we cannot agree that it was waived or forfeited.

No other work done by engineer Prann up to February 27, 1932, was considered by the latter, nor by the Superintendent of Public Works of the Department of the Interior, or the engineer of Municipal Works of said department, or by the Commissioner himself as "extra work," under the terms of the contract. Until said date the total value of work done by engineer Prann plus the extra work amounted to $37,076.33.

The last certificate issued in favor of said contractor for work done, No. 8, is the final liquidation of the construction of the filtration plant, and covers the period up to June 3, 1933. Said certificate amounts to $8,677 and includes, especifically, an item of $2,843.57 for excavations in ditches in "excess of the 20 per cent," extra work in the new dam for $546, lighting of the plant building for $370.50, and work "by administration" totalling $1,049.65, all of which amounts to $4,809.72 for extra work. No other work done by engineer Prann from February 27, 1932 until the final completion of the filtration plant, was included in certificate No. 8 as extra work or in excess of the 20 per cent. Therefore, from the total of $8,677 recommended for payment in said certificate No. 8, until the completion of the project, only the sum of $4,809.72 should be considered as forfeited and waived by Prann, for failure to file his claim to the municipality in the next monthly estimate for extra work, after it was completed, according to Clause 30 of the General Conditions. The difference between the amount of $12,384.63 claimed in the complaint and the $4,809.72 not timely claimed by Prann—and therefore waived by him—that is the sum of $7,574.91 was timely and properly claimed since from the last sum of $7,574.91, only $1,350 was included as extra work on certificate No. 7, and as we have seen it was claimed in time. The sum of $6,224.91 corresponds to work done in alterations or changes in the original project, which was not

considered by any of the parties in the contract as extra work, as defined in Clause 30 of the General Conditions, and which is a part thereof. Clause 30 defines *extra work* as follows: "Any alteration or changes in the project producing work not provided for in the contract shall be considered as extra work." It also provides that "The claims for extra work, when it is ordered, shall be presented and paid in the next monthly *estimate* for extra work, otherwise said claims shall be *forfeited* and *waived*." Nevertheless, it immediately defines what it *shall not be considered* as extra work when it says "Alterations or changes in the details of the work *not entailing new prices* shall not be considered as extra work, and the contractor will be required to perform such alterations or changes under the direction of the local engineer at the prices named in the Contract; *Provided, however*, That said alterations and changes do not increase the quantities over 20 per cent of the original estimate." (Italics ours.) Up to here the said Clause 30 excludes from the definition of extra work, the alterations or changes not entailing variations in the prices for the various units included in the specification papers on which the public bid and contract were based, provided same do not increase the quantities over 20 per cent of the original estimate. We see then, that not all alterations or changes entailing an increase in the cost of the project are considered extra work, for they include only the alterations or changes involving new prices, that is, prices distinct from those specified per unit of work or of material in the original estimate of the project plus such alterations or changes that might exceed by 20 per cent of said estimate the prices estimated in the original project.

Having previously stated the nature of the work done by contractor Prann according to the various certificates issued by competent officers, and in view of the limited scope given to the phrase extra work, by Clause 30 itself, we must conclude that Prann's only claim not presented in time and therefore waived, is the one for $4,809.72, which includes

work in excess of 20 per cent amounting in the new dam to $2,843.57, extra work for $546, in the plant's lighting for $370.50 and in administration work for $1,049.65.

The above conclusion, however, is not sufficient to set aside our judgment of May 10, 1949. It is necessary that we examine the question raised by appellant in its motion for reconsideration, which refers to the *dictum* in our opinion of the same date, citing the case of *De la Cruz* v. *Government of the Capital*, 68 P.R.R. 496, 506, to the effect that the evidence discloses that when Prann completed and delivered the filtration plant, the item of $80,000 appropriated for improvements to waterworks was already exhausted and that therefore if no appropriations were made in subsequent budgets to meet the liability claimed, this would be sufficient cause to set aside the claim.[4]

The case of *De la Cruz* v. *Government of the Capital*, *supra*, is indeed distinguishable from the case at bar. It dealt with the purchase of some lots without the municipality having any funds whatsoever to cover payment thereof when the contract of sale was executed and we said, citing the case of *Gayá* v. *Government of the Capital*, 68 P.R.R. 263, that according to § 42 of Act No. 99 of May 15, 1931, to establish a special government for the capital of Puerto Rico,[5] a contract is not enforceable against the Government of the Capital unless there is an appropriation in the budget to cover the payment of any obligation which might arise by reason of such contract.[6] We also said, citing *Torrellas* v. *Municipality*, 62 P.R.R. 207 and *González* v. *Municipality*, 61 P.R.R. 357, and § 8, subdivision 9 of Act No. 53 approved on April

[4] We also said that "the complaint does not allege the existence of any fund in the budget to meet the sum claimed."

[5] Said Section provides:

"The government of the Capital shall not incur obligations or debts additional to the budgetary appropriations, except in cases where such appropriations, may be increased by means of transfers from surpluses in other items, or by means of some extraordinary revenue provided for the purpose."

[6] In said case the special funds involved were not derived from loans.

28, 1928—Municipal Law—that "if there is no appropriation in the budget to cover the payment occasioned by any contract entered into by a municipality or by the Government of the Capital, the contract is *ultra vires* and void."

We repeat now the rule set forth in the cases of De la Cruz and Gaya, as well as Torrellas and González,[7] already cited, in the sense that a contract executed with a municipality is *ultra vires* and void, if at the time of the transaction, no amount has been appropriated in the municipal budget for the purpose of meeting any such obligation. But the fact is that such rule cannot be applied to this case, as contrary to the *dictum* in our opinion of May 10, 1949, the contract between the Municipality of Caguas and the contractor Prann was not contracted according to law and under the authority conferred upon the Mayor of the Municipality of Caguas by § 64 of the Municipal Law,[8] there being at the time of the transaction an appropriation of $80,000 under an item entitled "Improvements in Waterworks" as part of the loan of $146,000 made by the Municipality of Caguas in 1928 and included as such in the loan ordinance, pursuant

---

[7] See also *Humacao Lumber Co.* v. *Am. Surety Co.*, 59 P.R.R. 164; *Moscoso Hno. & Cía.* v. *Municipality*, 50 P.R.R. 181. *Cf. Serra* v. *Municipality of Ponce*, 47 P.R.R. 136; *Serra, Garabís & Co., Inc.* v. *Municipality*, 42 P.R.R. 452, modified in 65 F. 2d 691.

[8] Said Section provides pertinently:

"That all municipalities are hereby authorized and empowered to provide in the corresponding ordinance, as a prerequisite for the obtention of advance or loans from The People of Porto Rico, or for the conversion or reissuance of existing evidences of indebtedness to The People of Porto Rico, or for the issuance of bonds or other evidences of indebtedness authorized by law, that any public work or improvement included within the purposes of said ordinance, the cost of which, in whole or in part, is to be paid from the proceeds of such advance or loan, or from the sale, alienation, transfer, pledge or hypothecation of any bonds or other evidences of indebtedness, shall be constructed in accordance with plans and specifications approved by the Commissioner of the Interior and by the municipality. In this case every contract for the construction of such public works or improvements shall be entered into by the mayor, in behalf of the municipality, with the approval of the Commissioner of the Interior and in compliance with the laws governing the construction of municipal public works or municipal improvements; . . . ."

to §§ 64 and 8(3) of the Municipal Law. It is evident that it was not a question of an appropriation in the annual budget or of the regular municipal funds, since the money resulting from a loan, according to § 57 of said Act "shall be paid into the municipal treasury and applied only to the purposes specified in the ordinance authorizing the loan," with certain exceptions as to the surplus remaining after said purposes have been carried out. In like manner, under § 8(3) of said Act, the revenues necessary for the redemption of principal and interest provided for in the loan ordinance, although derived from regular taxes, shall constitute a special trust fund.[9]

The contract entered into between the Municipality of Caguas and Prann, is not *ultra vires* nor void, since at the time it was contracted there existed the item of $80,000 from which to draw the amount of $33,976.64—original cost of the construction project of a filtration plant, according to the Specification Contract under which the public bid was called, and the contract adjudicated to engineer Prann [10]—as well as any other sum derived from enlargements or changes in said project, as Clause 30 of the General Conditions authorized, under certain circumstances and in compliance with certain requisites, the enlargement or change of the work under construction, and consequently, to increase the total cost of the project. Such was the agreement between the parties on the matter at the time when there remained an item of $80,000 derived from the funds of the loan contracted three years before. Although the record contains a stipulation to the effect that at the time the filtration plant was

---

[9] A special property tax was levied for the redemption of the loan in this case.

[10] Clause No. 26 of the "Instructions to the bidders and General Conditions," under which the call for bids was made and which permitted alterations and changes in the original specifications of the project, provided:

". . . Any work in excess of twenty (20) per cent of the amount of the contract shall be dealt with pursuant to sec. 30 of the General Conditions of the Contract for insular public works."

*completed* and *delivered* by contractor Prann, the item of
$80,000 appropriated for improvements to the waterworks
was already exhausted, such fact does not constitute a defense
for the municipality defendant, for the time which determines
the length and scope of the obligation and its validity insofar
as to the existence or nonexistence of funds to meet the obliga-
tion is concerned, is the date on which the contract is entered
into, and not the date of the completion of the work. There
was no evidence in the record to show that at the time the
contract was carried out, the remainder up to the sum of
$80,000 of the item allotted in the loan ordinance to improve-
ments in the waterworks, after deducting $33,976.64 already
mentioned, would have been invested or set aside for other
work. The fact that the municipality, subsequent to the
contract entered into with Prann, allotted part or all of said
remainder of money to some other aqueduct work, does not
relieve the municipality from its responsibility under the
terms of such contract. *Crisp County* v. *S. J. Groves & Sons
Co.,* 73 F. 2d 327, 96 A.L.R. 391; *Town of Covington* v.
*Autrim Lumber Co.,* 252 Pac. 50. See also *Wilson* v. *Gaston,*
141 Ga. 770, 82 S. E. 136; *School Dist. No. 8* v. *Home Lumber
Co.,* 97 Okla. 72, 221 Pac. 433 and other cases cited in Anno-
tation 96 A.L.R. 397. *Cf. City of Healdton* v. *Blackburn,*
37 P. 2d 311 and 159 A.L.R. 1261. The fact that the Mayor,
after the work had begun, and due to certain changes and
extra work ordered by the Department of the Interior, in
letter addressed to the contractor Prann and dated August
15, 1931, placed all responsibility for the changes ordered on
said department, does not relieve the municipality either from
responsibility. It was not necessary for the Mayor to do so,
because, according to the terms of the contract, the super-
vision and approval of the work was left in the hands of the
Commissioner of the Interior, who, for the purpose of the
municipality's responsibility in the work as a contracting
party, was its agent in the execution of the work to be carried
out by Prann.

 We assume that the law was complied with and that, when the ordinance authorizing the loan in the amount of $146,000 was approved, it specified "the work or services to be carried out and the value of each." Municipal Law, § 8(3). Therefore, the only defense of the municipality against Prann's claim—regarding the funds appropriated for the work to be carried out—was that said claim exceeded the amount authorized in the loan ordinance for "Improvements in the Waterworks," or that the remainder of said amount after deducting the sum specified in the contract as the original cost of the project had been invested in or set aside, at the time when the contract between the municipality and Prann was executed, for other "Improvements in the Waterworks." Such allegation would constitute an affirmative defense of the municipality defendant. *Gayá* v. *Municipality, supra; Tomasini* v. *Municipality of Ponce*, 50 P.R.R. 766; *Serra* v. *Municipality of Ponce*, 47 P.R.R. 136. It was not necessary either to allege in the complaint the existence of funds in the budget—for we are not dealing here with obligations or debts to be met with regular budgetary appropriations. We have noted that the evidence only showed that the item of $80,000 was exhausted at the date of the *completion* and *delivery* of the filtration plant.[11] In view of such facts plaintiff's claim cannot be defeated for under the terms of the contract, and of Clause 30 of the General Conditions which is part of same, and the existence of funds at the time of its execution, the obligation contracted was enforceable against defendant because there was no vice to render it illegal.

Having decided in favor of appellant the two main ques-

---

[11] The municipality appellee states in a complementary brief in the case and in its opposition to the Motion for Reconsideration:

"Although at the time the transaction took place there was money available, the fact is that at the time of the delivery of the work, the item appropriated in the budget was exhausted and therefore pursuant to § 8 subdivision 9 of the Municipal Law of 1928 "no obligations or debts shall be incurred beyond the amounts appropriated in the budget.""

tions raised in its motion for reconsideration, we feel constrained to set aside our judgment of May 10, 1949, reverse the judgment rendered by the lower court, and grant the complaint in the amount claimed and which was not waived by the contractor. The special defenses raised by the Municipality in its answer were adversely decided by the lower court—although the latter rendered judgment in its favor by dismissing the complaint upon granting its defense that Prann waived his right to the full amount for failure to claim in time, as required by Clause 30 of the General Conditions. We have nothing to add to the conclusions of the lower court.

Therefore, we will set aside our opinion and judgment of May 10, 1949 in the case at bar, and the judgment rendered by the lower court on April 8, 1946 will be reversed and another rendered granting the complaint, adjudging the municipality to pay to plaintiff the sum of $7,574.91, with interest at the legal rate from November 6, 1933, on which date after the work had been delivered and definitely accepted, Prann's claim was sent by the Commissioner of the Interior, with his approval and final liquidation to the municipality defendant for payment, plus costs.